USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Genetec, Inc.,

               Plaintiff,

      –v–

PROS, Inc.,

               Defendant.

---

20-cv-07959 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    After contracting to purchase Defendant's software, Plaintiff filed a complaint against Defendant for negligent and intentional misrepresentation and breach of contract under New York law. Defendant moves to dismiss for failure to state a claim. For the reasons that follow, that motion is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

### A. Factual Summary

    The following allegations are drawn from Plaintiff Genetec's Amended Complaint, Dkt. No. 10, and are accepted as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    Genetec is a company that sells software and hardware related to video surveillance and license plate recognition. Dkt. No. 10 at ¶ 7. In 2019, Genetec was itself in the market for a new software to help streamline and integrate its process for providing quotes to customers for its various products. *Id.* Genetec evaluated a number of vendors that sold this kind of software, including Plaintiff PROS. *Id.* Beginning in September 2019, the parties entered into a "pre-sale

due diligence phase" wherein PROS provided a number of sales presentations to Genetec regarding its software, which was called "Smart CPQ."  *Id.* ¶¶ 7-8.

The complaint alleges that during this period, PROS made various misrepresentations. PROS gave a presentation on September 18, 2019 in which it made significant false claims about its customer base to Genetec. *Id.* ¶ 9.  First, PROS presented a slide deck which said that it had numerous satisfied customers using the software, including a case study of an unnamed company that had 6,000 customers in 24 countries.  *Id.*  It also represented during that presentation that the company Honeywell was a satisfied customer.  *Id.*  Finally, Jorge Garza, a representative of PROS, stated that PROS had over 900 successful implementations of the software.  *Id.*  Almost a year later, on June 12, 2020, PROS would reveal to Genetec that PROS had only one active customer that had purchased the software product that Genetec was using, which was not Honeywell, and that a second customer was projected to "go live" later that month.  *Id.*

The complaint also alleges that PROS made misrepresentations during this phase about the software program Genetec was purchasing and its functionality.  On October 17, 2019, PROS provided Genetec with a document entitled "Help Topic – Integration – Microsoft CRM" which described the sync mechanism for processing data.  *Id.* ¶ 10.  According to this document, the mechanism involved two separate "Customer Records Management" entities:  PROS Quote Content IN and PROS Quote Content OUT.  *Id.*  In reality, the software product that PROS would later implement did not include those entities and had a different sync mechanism— meaning that the software that Genetec received had a materially different architecture than the software that it was promised.  *Id.*  Moreover, that same document represented that the software could be used on a mobile device using the Dynamics 365 app.  *Id.*  As PROS would later admit, the software could not be used through the Dynamics 365 app but instead could only function on

a mobile device through a browser with decreased functionality.  *Id.* ¶ 11.  That same day, Mr. Garza represented at a pre-sales meeting that once the software was implemented, it would be easy for Genetec to maintain the software without ongoing help from PROS.  *Id.* ¶ 12.  He even noted that PROS was in the business of selling software, not professional services. *Id.*  After implementation began, however, the PROS project manager assigned to Genetec would concede that Genetec would have to continue to pay PROS on a frequent and extensive basis in order to maintain and update the software.  *Id.*

Finally, PROS also represented in the parties' contract that the implementation process would take five months to complete.  *Id.* ¶¶ 13-14.  However, after five months, it would become clear that the software was far from ready.  *Id.*

Because of the materially false misrepresentations alleged above, Genetec decided to purchase the software and executed a contract with PROS to implement the software into its system.  *Id.* ¶ 7.  Five months into the implementation process, Genetec asked PROS to conduct a "smoke test" as required by the parties' contract, which is where the software is tested for basic functionality under common circumstances.  *Id.* ¶ 16.  The software failed the smoke test for five straight weeks in June and July of 2020.  *Id.*  Genetec then began to learn that various representations made above were false, that the software product did not have the same functionality and user-friendly interface that was promised, and that the product was very far away from being successfully implemented.  *Id.* ¶ 17.  Essentially, Genetec learned that the product that PROS was implementing into its system was not the same product that it had previously sold to other customers, but instead that Genetec had been "made an unwitting 'beta tester' of a new version of the software" that was significantly inferior and undeveloped.  *Id.* ¶ 18.  PROS had induced Genetec into purchasing the new software because so far it only had one

existing customer and needed additional customers so it could successfully market its product. *Id.* ¶ 14.

On July 10, 2020, Genetec notified PROS that it had entered into the contract in reliance on material false representations and that the contract was null and void or otherwise had been breached. *Id.* ¶ 19.  Genetec demanded that PROS refund the approximately $300,000 in payments it had made thus far and reserved its right for consequential damages, which it estimated to be approximately $1,000,000. *Id.*  PROS has refused to comply with this demand. *Id.*

### B. Procedural History

On September 25, 2020, Genetec filed a complaint in this Court based on diversity jurisdiction.  In Genetec's Amended Complaint, the operative complaint in this action, Genetec asserts claims against PROS for intentional and negligent misrepresentation, as well as breach of contract and breach of the covenant of good faith and fair dealing. Dkt. No. 10.   PROS moved to dismiss.  Dkt. Nos. 7, 11.  That motion is now fully briefed.  Dkt. Nos. 13, 15.

## II.   LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in the Complaint as true and draws all reasonable inferences in favor of the non-moving party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. At 555.

**B. Fed. R. Civ. P. 9(b)**

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead the circumstances of the alleged fraudulent activity with particularity. *See* Fed. R. Civ. P. 9(b). This means they must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks and citation omitted).

## III.   DISCUSSION

Before the Court is PROS's 12(b)(6) motion dismiss Genetec's complaint in its entirety for failure to state a claim under New York law.[1] For the reasons that follow, the Court grants PROS's motion as to Genetec's breach of contract and breach of the implied covenant or good faith and fair dealing claims, but otherwise holds that Genetec has stated a claim for both intentional and negligent misrepresentation.

**A. Intentional and Negligent Misrepresentation Claims**

To state a claim for intentional misrepresentation under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Capital, LLC*, No. 15-cv-8293 (ALC), 2016 WL 5334980, at *4 (S.D.N.Y. Sept. 22, 2016) (internal quotation marks and citation omitted). For a claim for negligent

---

[1] Both parties assume that Genetec's claims are governed by New York law, which is sufficient for choice of law purposes. *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co*., 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016) (citing *Arch Ins. Co. v. Precision Stone, Inc*., 584 F.3d 33, 39 (2d Cir.2009)).

misrepresentation, the plaintiff must also plead the elements of (1) a material misrepresentation or omission, (2) reasonable reliance, and (3) resulting damages. *See Hydro Investors, Inc. v. Trafalgar Power Inc*., 227 F.3d 8, 20 (2d Cir. 2000). And while the plaintiff need not allege for a negligent misrepresentation claim that the defendant had knowledge of the falsity and an intent to defraud, the plaintiff must plausibly allege that the defendant *should* have known that the information was false. *Id.* Lastly, the plaintiff must allege that the defendant "had a duty, as a result of a special relationship, to give correct information" to the plaintiff. *Id.*

Moreover, both claims must be plead in accordance with the heightened standard of Federal Rule of Civil Procedure Rule 9(b). Claims for intentional misrepresentation under New York law must be plead in accordance with Rule 9(b). *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 179 (2d Cir. 2015)). While it is an unsettled question whether Rule 9(b) applies to claims for negligent misrepresentation under New York law, courts in this district have consistently held that the rule at least applies to negligent misrepresentation claims that sound in fraud. *See Riker*, 2016 WL 5334980, at *5 (collecting cases). Because Gentec's negligent misrepresentation claim "relies on the same facts and is nearly identical to the Complaint's intentional misrepresentation claim[,]" it is subject to Rule 9(b). *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am*., 420 F. Supp. 3d 123, 142 (S.D.N.Y. 2019).

As discussed below, Genetec has sufficiently alleged each element of its intentional and negligent misrepresentation claims in accordance with Rules 12(b)(6) and 9(b).

### 1. Alleged Material False and Misleading Representations

As discussed in the factual summary, the complaint specifically alleges that PROS made the following seven misrepresentations:

#1. A slide deck provided at the September 18, 2019 presentation stated that PROS had numerous satisfied customers using the software, including a case study of an unnamed

company that had 6,000 customers in 24 countries.  It was later revealed that PROS only had one customer that had used the software and one customer that was soon to "go live" with the software.

#2.  A document provided at the September 18, 2019 presentation stated that the company Honeywell was a satisfied customer.  It was later revealed that PROS only had one customer that gone live with the software, which was not Honeywell.

#3.  Mr. Garza, a representative of PROS, stated at the September 18, 2019 presentation that PROS had over 900 successful implementations of the software. It was later revealed that PROS only had one customer that had used the software and one customer that was soon to "go live" with the software.

#4.  A document entitled "Help Topic" provided on October 17, 2019 stated that the sync mechanism for processing data would involve the PROS Quote Content IN and PROS Quote Content OUT entities.  It was revealed a year later that the software that was provided to Genetec did not have these entities.

#5.  The "Help Topic" document provided on October 17, 2019 stated that the software could be used on a mobile device using the Dynamics 365 app.  It was later revealed that software could not be used through the Dynamics 365 app.

#6.  Mr. Garza stated at an October 17, 2019 meeting that it would be easy for Genetec to maintain the software without ongoing help from PROS and that PROS was in the business of selling software, not professional services. It was later revealed that Genetec would have to continue to pay PROS on a frequent and extensive basis in order to maintain and update the software.

#7.  The contract between the parties estimated that implementation would take five months to complete the implementation process. After five months, implementation was nowhere near finished.

Genetec must plausibly allege that these representations were materially false or misleading.  Further, under Rule 9(b), Genetec must plead the circumstances surrounding those alleged statements with particularity.  As discussed next, the Court determines that Genetec has done so for misrepresentations #1-5.

### a.  The allegations satisfy Rule 9(b)

Under Rule 9(b), Genetec must state with particularity which statements are fraudulent, the speaker of the statements, where and when the statements were made, and why the

statements are fraudulent.  *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375

F.3d 168, 187 (2d Cir. 2004).

Misrepresentations #3 and 7 are sufficiently particularized.  First, the speaker of each

statement is identified.  The complaint alleges that these statements were made by Mr. Garza on

behalf of PROS.  It is well settled that a company may be "liable for the representations of its

agents," so long as "those representations are made within the scope of the agent's employment."

*Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 453 (S.D.N.Y. 2007).  Further,

the complaint alleges the exact dates and occasions on which these statements were allegedly

made, i.e., during a presentation on September 18, 2019 and a meeting on October 17, 2019.

Finally, Genetec provides an explanation for why those statements were false or misleading.

(However, as discussed below, misrepresentation #7 is an unactionable opinion).

The remaining misrepresentations are also sufficiently particularized.  Each is allegedly

contained in a corporate document that was created on behalf of PROS to market the company's

product to Genetec.  A plaintiff may rely on "specific documents containing misrepresentations"

as opposed to oral statements if they "identify the documents and the specific statements within

them that were false or misleading." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing,*

*Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011).  Here, Genetec has adequately identified the

documents by alleging the date and occasion on which they were provided to Genetec and

describing the content of the document *and* what alleged misrepresentations were contained

therein.  Genetec also attached the documents, or at least portions of them, as exhibits to its

complaint.

PROS argues that although Genetec alleges that the October 17, 2019 "Help Topic"

document contained misrepresentation #5 regarding the Dynamics 365 app, the corresponding

exhibit attached to Genetec's complaint makes no mention of that app or mobile compatibility. Although that is true, it is not a basis for dismissal.  PROS does not claim that the attached exhibit contained alleged representation #5 about the Dynamics 365 app.  Rather, with respect to the alleged representation #4 regarding the sync mechanism, PROS stated that it attached "a copy of the relevant page from that document."  Dkt. No. 10 ¶ 10.  PROS then alleged that the same document also contained alleged representation #5 about the Dynamics 365 app, but did not attach the relevant page or pages that allegedly contain that representation.  Rule 9(b) does not require that a plaintiff attach the documents containing the alleged misrepresentations to the complaint, but rather that the plaintiff's complaint adequately plead the *who what when where* and *why* of those fraudulent misstatements.  *See* Fed. R. Civ. P. 9(b); *Eternity Glob.*, 375 F.3d at 187.  Genetec has adequately alleged that on October 17, 2019, PROS provided it with a document entitled "Help Topic" that contained the specific misrepresentation regarding the Dynamic 365 app and mobile compatibility.

Therefore, Genetec's complaint satisfies the heightened pleading requirements of Rule 9(b).  "[T]he purpose of Rule 9(b)'s particularity requirements is to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Ellington Credit Fund*, 837 F. Supp. 2d at 199 (citing *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979)).  The complaint informs PROS of the nature of the misrepresentations, the exact date and occasion those misrepresentations were allegedly made, the alleged speaker of the statement or document which contained the misrepresentation, and why Genetec believes it was fraudulent.  That is sufficient to put PROS on notice of the circumstances of the alleged fraud.

### b.  Alleged misrepresentations #1-5 are materially false and misleading

To satisfy the first element of a claim for intentional or negligent misrepresentation, Genetec must not only identify with particularly the alleged misrepresentations but must also plausibly allege that they are in fact false or misleading.  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), *aff'd,* 2 F. App'x 109 (2d Cir. 2001).  "Mere opinions or predictions of future events, however, are not actionable unless they are statements of intent to do something in the future, made with the knowledge that the act will not in fact be performed, or with the present intention not to perform it."  *Wilsen Assocs. Real Est. Corp. Inc. v. Pizilly*, 611 N.Y.S.2d 694, 695 (N.Y. App. Div. 1994); *see also Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009); *Icahn Sch. of Med. at Mount Sinai v. Health Care Serv. Corp.*, 234 F. Supp. 3d 580, 584 (S.D.N.Y. 2017).

Genetec has plausibly alleged that PROS statements #1-3 about its customer base were materially false and misleading.  Each of those statements represented to Genetec that PROS had multiple satisfied customers for whom it had already implemented the software that it was attempting to sell to Genetec, including Honeywell, when the alleged truth was that there was only one such customer and it was not Honeywell.  PROS argues that even if its representations in this regard were false, the identity, location, and number of PROS customers are not "material."  The Court disagrees.  In this context, a false statement is "material" if there is a substantial likelihood that a reasonable person would have considered it important in deciding whether to purchase PROS's software.  *Cf. People by James v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829 (N.Y. Sup. Ct. 2019) (in the securities fraud context, "a statement or omission is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act." (cleaned up)).  Whether PROS had successfully implemented the software for multiple other customers and whether those customers were satisfied with the

product are factors that a reasonable buyer would consider significant in deciding whether to go through with the purchase.

Moreover, Genetec has also alleged that statements #4-5 regarding the functionality of its software product were also materially false and misleading.  Genetec specifically alleges that PROS represented that the software would have two functions or components that, in reality, the software would not have:  the PROS Quote Content IN & OUT entitles in its sync mechanism for data processing and mobile compatibility through the Dynamics 365 app.  As alleged, those claims were false and significantly misrepresented to Genetec the nature of the product that it would later purchase.

Statements #6-7 however fail as a matter of law.  As to #6, Mr. Garza's statement that Genetec would be able to easily maintain the software without ongoing help from PROS is a predictive statement of opinion regarding future events, and therefore cannot be literally false.  While even predictive opinions can be actionable if they "are misleading about historical and present facts at the time they are made" and their "misleading nature can be verified at the time. . . . [,]" *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011), *aff'd sub nom.* 838 F.3d 223 (2d Cir. 2016), that is not the case here.  Genetec has not alleged that Mr. Garza's statement misrepresented any current or historical facts about PROS's product.  To be sure, assuming that Genetec's allegations are true, it was arguably unreasonable or excessively optimistic for Mr. Garza to provide this opinion considering that the software was in beta testing and had only been implemented for one customer.  But it is not enough that an opinion was "unreasonable, irrational, excessively optimistic, or not borne out by subsequent events." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 528 (S.D.N.Y. 2015), *aff'd sub nom.* 816 F.3d 199 (2d Cir. 2016) (cleaned up).  Gentec must plausibly allege Mr. Garza's opinion about future maintenance

was "both false and not honestly believed when [] made." *Kleinman v. Elan Corp*., 706 F.3d 145, 153 (2d Cir.2013).  The complaint fails to plausibly allege this to be the case.  Mr. Garza's opinion could have been based on his belief in PROS's product and his past experience with that one customer.

Lastly, for statement #7, PROS estimation in the parties' contract that implementation would take months to complete is likewise a predictive statement of opinion about future events. While Genetec alleges that this claim was "baseless," Gentec has not alleged facts demonstrating that PROS had "knowledge" that the implementation would not occur in this time period or a "present intention not" to meet that deadline.  *Wilsen Assocs.*,  611 N.Y.S.2d at 695.

In conclusion, Genetec has plausibly alleged with particularity that misrepresentations #1-5, which are those regarding PROS's customer base and the two representations in the October 17, 2019 document about the software's functionality, were materially false and misleading.  The remaining two statements are unactionable statements of opinion regarding future events and therefore cannot serve as the basis for a claim for intentional or negligent misrepresentation.

### 2.  Reasonable Reliance

To state a claim for either intentional or negligent misrepresentation under New York law, Genetec must plausibly allege that it reasonably relied on PROS's alleged misrepresentations. *See Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir. 1996) (citing *Heard v. City of New York*, 623 N.E.2d 541, 546 (N.Y. 1983)).  "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d

Cir. 2003). A key issue is whether "the relevant facts were easily accessible to the relying party" or if it had "no independent means of ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co*., 108 F.3d 1531, 1542 (2d Cir. 1997). "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Indus. v. Rohr Indus., Inc*., 748 F.2d 729, 737 (2d Cir.1984).

Genetec has plausibly alleged that it reasonably relied on PROS's alleged misrepresentations to its detriment. PROS made claims about its proprietary software and customer base that only PROS could know. There is an available inference in the complaint that although Genetec is also a sophisticated software company, it would have no way of independently investigating this non-public information, such as the amount of times that PROS has implemented its software for other customers and whether the specific functions that PROS represented would be included in its proprietary software would in fact be included. Therefore, it would be reasonable for Genetec to rely on PROS for this information. *See Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd*., 257 F. Supp. 3d 348, 359 (S.D.N.Y. 2017) (reasonable reliance plausibly alleged where only the defendant "could have known" certain facts about its investment business and "Plaintiffs could not have obtained that information from anyone else" and thus "had to rely" on defendant's representations.).

PROS's primary argument is that it was not reasonable for Genetec to rely on any prior representations regarding PROS's product because the parties subsequently entered into an arms-length transaction and the parties' contract superseded any such representations. PROS is correct only as to the general proposition that "a party cannot justifiably rely" on a defendant's representation after that representation was negated in validly executed contract. *Dallas*

*Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003).  But simply entering into a

contract does not negate all previous false and misleading statements.  The representation must

be "*specifically* disclaimed by agreement." *Id.* (emphasis added).  Even a "boilerplate disclaimer

of a party's representations cannot defeat a claim for fraud." *Id.*  There are no facts in the

complaint to support that any of the misrepresentations alleged, such as those regarding PROS

customer base and the functionality of its software, were specifically disclaimed in the parties'

contract, nor does PROS specifically contend that was the case.  Further "if the allegedly

misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific

disclaimer will not undermine another party's allegation of reasonable reliance on the

misrepresentations." *Id.*  As discussed, the facts regarding PROS's customer base and the

functionality of its proprietary software were not available to Genetec but were exclusively

known to PROS.  Therefore, the Court concludes that Genetec has plausibly alleged reasonable

reliance.

### 3. Scienter (intentional misrepresentation)

In order to state a claim for intentional misrepresentation under New York law, Genetec

must plausibly allege that PROS had the requisite scienter, or in other words that when PROS

made the misrepresentations it had "knowledge of [their] falsity" and "intent to defraud." *Riker*,

2016 WL 5334980, at *4.  To satisfy this requirement, the complaint must "allege facts that give

rise to a strong inference of fraudulent intent." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d

36, 39 (2d Cir. 2000) (internal quotation marks and citation omitted).  An inference of fraudulent

intent is "strong if it is cogent and at least as compelling as any opposing inference one could

draw from the facts alleged." *Loreley Fin.*, 797 F.3d at 176-77 (cleaned up).  The inference may

be demonstrated "through allegations of a motive to deceive and access to accurate information."

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1173-74 (2d Cir. 1994)).

The facts alleged in the complaint are sufficient to raise a strong inference of fraudulent intent.  Genetec alleges that, in addition to wanting to profit off a sale, PROS had a motive to attract initial buyers for its new software product so that it would become more marketable.  Any potential buyer however would be less likely to purchase software that was allegedly in the "beta testing phase" and did not have a long track record of successful implementation.  Genetec's allegations that PROS made false statements to Genetec about the prior success of its product and its functionality—despite allegedly having knowledge that PROS had only had one customer and that its product did not have said functions—gives rise to the strong inference that PROS knowingly made those false claims to induce Genetec into purchasing its product.

### 4.  Special Relationship (negligent misrepresentation)

New York law requires "the existence of a special or privity-like relationship between the plaintiff and defendant for a successful negligent misrepresentation claim." *AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 524 (S.D.N.Y. 2013), *aff'd sub nom.* 661 F. App'x 2 (2d Cir. 2016) (cleaned up).

As a general matter, the relationship between a seller and buyer in a typical arms-length marketplace transaction is usually insufficient to constitute a "special relationship." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007).  "Because 'casual' statements and contacts are prevalent in business, liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured

party such that reliance on the negligent misrepresentation is justified." *Eternity Glob*, 375 F.3d at 188 (cleaned up). A special position of confidence and trust might arise by through a party's "[d]eliberate representations" which can "give rise to a duty to speak with care." *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (internal quotation marks and citation omitted). This is especially true if the individual has "exclusive knowledge" of certain facts and makes assurances to a person "wholly without knowledge" of them, *Eternity Glob.*, 375 F.3d at 189 (quoting *Heard*, , 623 N.E.2d at 546), and if the individual has "awareness that the statement was to be used for a particular purpose" and that the other party would rely on it "in furtherance of that purpose," *Aetna Cas. & Sur. Co.*, 404 F.3d at 584. "In contrast, where the statement at issue is directed at a 'faceless of unresolved class or persons,' no duty of care or special relationship arises." *Id*.

The relationship between Genetec and PROS is alleged to be different than the typical buyer and seller in a casual commercial transaction. Genetec alleges that during the "pre-sale due diligence phase," the two were engaged in multiple discussions over a series of months regarding the potential purchase of PROS's proprietary software. During this time, PROS allegedly made deliberate representations about aspects of its business that were within its exclusive knowledge. As discussed in section III.A.2, the inference is available that Genetec could not have independently discerned how many times PROS has successfully implemented its product with existing customers or what the functionality and features of its proprietary software would be. Genetec had to rely on PROS's representations regarding these matters. PROS allegedly made these false statements for the purpose of convincing Genetec to buy its product and therefore was aware, or at least should have been, that Genetec would rely on these statements in making that decision. The complaint thus adequately alleges that "the nature and

caliber of the relationship between the parties" was such that Genetec's alleged reliance on PROS's misrepresentations was justified. *See Trainum v. Rockwell Collins, Inc*., No. 16-CV-7005 (JSR), 2017 WL 1093986, at *4 (S.D.N.Y. Mar. 9, 2017) (citing *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)).

In response, PROS cites cases where courts have found that the relationship between the seller of a software product and a buyer of that product did not have a "special relationship" for the purposes of a negligent misrepresentation claim under New York law. Dkt. No. 19 at 22. But under New York law, the issue turns on the nature of the parties' relationship, not the nature of the product. Those cases did not involve facts "indicat[ing] that the parties were anything more than arms-length parties to a contract." *JewelAmerica Inc. v. Frontstep Sols. Grp., Inc.*, No. 02 CIV. 1328 (RO), 2002 WL 31465807, at *2 (S.D.N.Y. Nov. 1, 2002); *see also Atkins Nutritionals, Inc. v. Ernst & Young, LLP.*, 754 N.Y.S.2d 320 (N.Y. App. Div. 2003) (determining that the parties "had a conventional business relationship . . . with respect to the computer consulting services."). Regardless of what kind of product it was selling, it was the fact that PROS allegedly made deliberate statements about facts within its exclusive knowledge for a particular purpose, while knowing that Genetec would rely on them for that purpose, that created a special relationship of trust.

Lastly, PROS argues that Genetec cannot claim that they had a special relationship of trust because it "expressly disclaimed" any such relationship in the parties' contract when it agreed to a provision that purportedly states that "[t]he Parties are independent contractors" and no "partnership, agency, [or] joint venture" relationship exists. Dkt. No. 19 at 15. PROS cites no law, New York or otherwise, for this proposition and the Court is aware of none. Therefore,

Genetec has plausibly alleged that a special relationship exists for the purposes of its negligent misrepresentation claim.

* * *

In sum, Genetec has plausibly alleged claims for intentional and negligent misrepresentation under New York law.  For five of the seven specific statements identified in the complaint, Genetec has plead with particularity that PROS made material false or misleading representations about either its track record with implementing the software or the functional capabilities of the software.  Further, Genetec has plausibly alleged that it reasonably relied on those claims in deciding to purchase the software.  And lastly, Genetec has also plausibly alleged the additional elements of scienter for the intentional misrepresentation claim and the existence of a special relationship for the negligent misrepresentation claim.  Therefore, PROS's motion to dismiss these claims for failure to state a claim is denied.

## B. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Genetec asserts claims for breach of contract or, in the alternative, breach of the covenant of good faith and fair dealing.  Neither has been adequately alleged.

For a breach of contract claim under New York law, to survive a motion to dismiss "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp.*, 91 F.3d at 348.  For each of these elements, the "complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  For the element of breach, the "plaintiff's allegations must identify the provisions of the contract that

were breached." *Reznick v. Bluegreen Resorts Mgmt., Inc*., 62 N.Y.S.3d 460, 462 (N.Y. App.

Div. 2017); *Clifden Futures, LLC v. Man Fin., Inc*., 858 N.Y.S.2d 580, 582 (N.Y. Sup. Ct. 2008).

Genetec has not plausibly alleged facts demonstrating that PROS breached any provision

of the agreement.  The complaint largely consists of allegations regarding PROS alleged

misrepresentations made *prior* to the contract's execution in order to induce Genetec to purchase

the software.  No contract can be breached before it is formed.  *See Reznick*, 62 N.Y.S.3d at 462

("[W]ithout a contract there can be no breach of the agreement.").  Genetec provides almost no

details on either the specific contractual provisions the parties agreed to or how PROS allegedly

breached them.  The only somewhat specific allegation Genetec provides is that the "smoke

tests" were "contractually required" to be performed under the contract and that the software

failed those tests multiple times in a row.  This conclusory allegation is insufficient.  *See*

*Frontline Processing Corp. v. Merrick Bank Corp*., No. 13 Civ. 3956 (RPP), 2014 WL 837050,

at \*2 (S.D.N.Y. Mar. 3, 2014) ("Conclusory allegations that a defendant breached an agreement

are insufficient to support a breach of contract claim.").  Genetec does not provide the language

of this provision in the complaint or explain how failing a smoke test constitutes a breach of the

parties' contract.  Just because the test was allegedly required to be performed does not mean

that the alleged failure to pass the test was itself a breach.

Genetec also has failed to state a claim for breach of the implied covenant of good faith

and fair dealing.  This claim requires alleging that the defendant breached the promise implied in

every contract that "[n]either party to a contract shall do anything that has the effect of

destroying or injuring the right of the other party to receive the fruits of the contract, or to violate

the party's presumed intentions or reasonable expectations."  *Spinelli v. Nat'l Football League*,

903 F.3d 185, 205 (2d Cir. 2018) (cleaned up).  Again, Genetec simply does not identify any

conduct PROS allegedly engaged in after the contract was executed that constitutes the sort of bad faith action necessary to sustain this claim.  *See Hunter v. Deutsche Bank AG, New York Branch*, 866 N.Y.S.2d 670, 671 (N.Y. App. Div. 2008).

In sum, Genetec's complaint focuses primarily on PROS alleged conduct prior to entering into the contract and is otherwise devoid of the kind of allegations necessary to state a claim for breach.

## IV.   CONCLUSION

PROS's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Genetec has adequately alleged claims for intentional and negligent misrepresentation but has failed to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing.  This resolves Dkt. Nos. 7, 11.

In an order on February 18, 2021, the Court adjourned the initial pretrial conference *sine die* pending the resolution of PROS's motion to dismiss.  Dkt. No. 25.  The conference is rescheduled to October 15, 2021 at 3:45 P.M.  The parties are to submit their joint letter and proposed case management plan seven days in advance of conference in accordance with the instructions set forth in the Court's Notice of Initial Pretrial Conference.  Dkt. Nos. 6, 20.


SO ORDERED.

Dated:  September 21, 2021
         New York, New York

_____
          ALISON J. NATHAN
       United States District Judge