UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENETEC, INC.,

                        Plaintiff,

        -against-

PROS, INC.,

                        Defendant.

Case No. 1:20-cv-07959 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On March 21, 2024, the Court granted the motion by PROS, Inc. ("PROS") for summary judgment on its counterclaim against Genetec, Inc. ("Genetec") and denied the motion by Genetec for summary judgment on its misrepresentation claims. Dkt. 85; *Genetec, Inc. v. PROS, Inc.*, No. 20-cv-07959 (JLR), 2024 WL 1216472 (S.D.N.Y. Mar. 21, 2024) ("*Genetec II*"). Familiarity with that opinion, which sets out the facts of this case, is assumed. That same day, PROS obtained a judgment from the Clerk of Court stating that PROS had been "granted summary judgment as to its counterclaim against Genetec for breach of contract." Dkt. 86. The judgment did not fix an amount certain in damages recoverable by PROS for the breach.

On April 17, 2024, PROS moved to supplement, correct, and/or amend the judgment. Dkt. No. 95 ("Br.") at 1. PROS asks the Court to amend its judgment to state that PROS is entitled to: (1) $1,470,992.51 in damages, including $795,261.04 in attorney's fees and costs and $160,947.24 in prejudgment interest; and (2) postjudgment interest. *Id.* at 22. On April 19, 2024, Genetec appealed this Court's grant of summary judgment. Dkt. 98; *see* Dkt. 99 (refiled April 22, 2024). The Second Circuit stayed the appeal to allow this Court to act on PROS's motion. Dkt. 102. On May 21, 2024, Genetec moved for approval of a *supersedeas* bond and to stay any proceedings to enforce the judgment entered by the Court in this action pending appeal.

Dkt. 107 ("Bond Br.") at 2.  Both motions are briefed.  *See* Dkts. 103 ("Opp."), 108 ("Reply"), 109 ("Bond Opp."), 110 ("Bond Reply").

For the following reasons, the Court grants PROS's motion to amend the judgment and grants in part Genetec's motion for approval of a *supersedeas* bond.

## DISCUSSION

I. **Motion to Amend Final Judgment**

   A. **Legal Standards**

PROS moves to amend the Court's judgment under Federal Rules of Civil Procedure ("Rules") 60(a), 60(b), and 59(e).  Br. at 1.

Under Rule 60(a), a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a).  The Court may correct such mistakes to "implement the result intended by the court at the time an order was entered."  *Weiming Chen v. Ying-Jeou Ma*, 595 F. App'x 79, 80 (2d Cir. 2015) (summary order) (brackets omitted) (quoting *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150 (2d Cir. 1999)).  However, "[a] motion under Rule 60(a) is available only to correct a judgment for the purpose of reflecting accurately a decision that the court actually made."  *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001) (per curiam) (quotation marks and citation omitted); *see Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) ("[T]he distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." (quoting *Dudley ex rel. Est. of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 675 (2d Cir. 2002))). A court may not under Rule 60(a) make "changes that alter the original meaning [of an order] to correct a legal or factual error."  *Rezzonico*, 182 F.3d at 151 (citation omitted).  "The mistake

2

correctable under the rule need not be committed by the clerk or the court; the rule may be utilized to correct mistakes by the parties as well." *Gunter v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-cv-01804 (WFK) (RER), 2021 WL 966147, at *2 (E.D.N.Y. Feb. 25, 2021) (quoting 11 Wright et al., *Federal Practice and Procedure* § 2854 (3d ed. 2012)), *report and recommendation adopted*, 2021 WL 964921 (E.D.N.Y. Mar. 15, 2021).[1]

Under Rule 60(b), a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A Rule 60(b) motion "is addressed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *accord Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

Rule 59(e) allows a district court "to alter or amend a judgment." Fed. R. Civ. P. 59(e). This rule "enables a party to request that a district court reconsider a just-issued judgment." *Banister v. Davis*, 590 U.S. 504, 507 (2020). The rule "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* at 508 (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). The Second Circuit has explained that:

> [U]nder [Rule 59(e),] district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice . . . . [T]he rule covers a broad range of motions, and . . . the only real limitation on the type of motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of

---

[1] After an appeal has been docketed and while it is pending, Rule 60(a) prohibits any corrections absent leave from the appellate court. Fed. R. Civ. P. 60(a). Here, however, the Second Circuit granted this Court leave to consider the merits of PROS's motion prior to the disposition of the appeal. *See* Dkt. 102; *Cendant Mortg. Corp. v. Saxon Nat'l Mortg.*, No. 99-cv-03161 (ADS), 2006 WL 8443639, at *3 (E.D.N.Y. Jan. 26, 2006) (district court had jurisdiction over Rule 60(a) motion despite pending appeal where Second Circuit order staying the appeal stated that the appellate court was waiting for a "final disposition" of the motion).

>a clerical error, or relief of a type wholly collateral to the judgment.

*ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quotation marks and citation omitted); *see Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) ("A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (brackets, quotation marks, and citation omitted)).

### B. Attorney's Fees

#### 1. *Applicable Standard*

The parties dispute the amount of attorney's fees to which PROS is entitled. PROS argues that the Court, in granting summary judgment, "did not fix the amount of PROS' monetary damages" before closing the case. Br. at 6. PROS claims that "it did not seek to fix the amount of attorneys' fees and costs" as part of its summary-judgment motion, and it now requests $795,261.04 for those expenses. *Id.* at 5, 12. Genetec responds that PROS made the "strategic decision" to quantify its total damages, including attorney's fees and costs, at $697,924.48 such that PROS cannot now request more money. Opp. at 10.[2]

PROS's summary-judgment papers were less than clear. PROS did not frame its motion as one for partial summary judgment or ask the Court to reserve its quantification of damages (including attorney's fees). *See* Dkt. 73 ("SJ Br.") at 12. To the contrary, PROS stated in its summary-judgment brief (albeit in a single sentence) that "Genetec's breach of the Contract directly caused PROS to sustain damages in the amount of $697,924.48, comprising $348,962.24

---

[2] Genetec does not contest that it owes PROS, at a minimum, damages of $514,784.23 in outstanding subscription and service fees. *See* Opp. at 2; Dkt. 77 ¶¶ 118-124 (admitting that Genetec failed to pay these amounts).

4

for the two years of unpaid subscription fees and $165,821.99 for unpaid Professional Services fees duly performed and invoiced, as well as interest and attorneys' fees under the Contract, which entitles PROS to collect reasonable legal fees and other costs incurred collecting the delinquent amounts owed by Genetec." *Id.* To support this statement, PROS submitted a declaration, dated May 4, 2023, in which its Chief Product Officer affirmed that "[*a*]*s of the date hereof*, there remains due and outstanding under the Contract $697,924.48, which represents $348,962.24 in outstanding subscription fees for the second and third years under the Subscription Order and $165,821.99 for Professional Services rendered prior to Genetec's illegal termination of the Contract, plus interest and attorneys' fees and costs." Dkt. 69 ¶ 75 (emphasis added). The Court understood this statement to mean that, at the time of its summary-judgment brief, PROS had incurred, and was requesting, $697,924.48 in damages.

Therefore, PROS's motion to amend the judgment is a poor fit for Rule 60(a). The Court's intention in granting summary judgment to PROS was to award PROS $697,924.48 in damages. That is the amount that PROS presented to the Court at the summary-judgment stage, the reasonableness of which Genetec did not dispute. Amending the Court's judgment "to implement the result intended by the court" of a $697,924.48 award would be proper under Rule 60(a). *Weiming Chen*, 595 F. App'x at 80. By contrast, amending the judgment to award hundreds of thousands of dollars in fees and costs not previously requested – and not previously reviewed by the Court – would be a substantive change that "alter[s] the original meaning" of the Court's order. *Rezzonico*, 182 F.3d at 151 (citation omitted); *see Integra Optics, Inc. v. Nash*, No. 18-cv-00345, 2018 WL 8732102, at *2 (N.D.N.Y. Oct. 17, 2018) ("Plaintiff's request to add an order granting attorneys' fees and costs . . . does not fall within the scope of [Rule] 60(a) because an award of attorneys' fees and costs was not contemplated as part of [the Court's

decision]; the addition of an order for an award of attorneys' fees and costs would therefore be a substantive change to that [decision] rather than a correction reflecting the decision actually rendered."). PROS argues that, as to its fee application, it seeks only what is due under the Court's grant of summary judgment and does not wish to amend the judgment. Br. at 9. Yet as discussed above, the Court intended to award PROS only $697,924.48; PROS plainly seeks more than what the Court intended to award it. Therefore, the Court cannot grant PROS's motion as to attorney's fees under Rule 60(a).

However, the Court finds, for several reasons, that an amendment of the judgment under Rule 60(b) is necessary as to PROS's damages.

First, the single-sentence section on damages in PROS's summary-judgment brief – entitled "Genetec's Breach of the Contract Caused PROS to Sustain Damages" – is better read in context as an argument that PROS had suffered some amount of damages and therefore satisfied the last element of its breach-of-contract claim. SJ Br. at 12. PROS's burden as to this element was to show only that some quantum of damages was attributable to Genetec's breach, not to proffer a final dollar amount. *See, e.g.*, *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 718 (S.D.N.Y. 2022) ("For purposes of summary judgment, plaintiffs need not . . . prove the exact amount of such damages.); *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 391 (2d Cir. 2006) ("[A] plaintiff need only show a stable foundation for a reasonable estimate of damages to which he is entitled as a result of the breach.").

Second, PROS did not present evidence of the reasonableness of the attorney's fees sought or submit supporting billing records. Nor did it discuss its damages apart from the aforementioned sentence. SJ Br. at 12. That PROS did not submit with its summary-judgment

6

motion any billing-record evidence of its fees and costs, as it has done now, suggests that PROS intended to fix its damages after establishing Genetec's liability.

Third, the contours of pre- and postjudgment interest, undisputedly sought by PROS, were not discussed by the parties on summary judgment, nor fully examined by the Court.

Fourth, PROS did not clearly present the amount of damages (including attorney's fees) in its summary-judgment motion, further supporting the Court's need to determine precise damages at a later date. *See, e.g.*, *Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-cv-04695 (KMK), 2022 WL 4538954, at *17 (S.D.N.Y. Sept. 28, 2022) (granting partial summary judgment as to liability for certain contracts but denying motion as to damages where existence of damages was proven but the quantum of damages was unclear). For example, PROS's reference to $697,924.48 in its summary-judgment brief (and accompanying declaration) is the same amount alleged in its counterclaim 18 months earlier, even though PROS certainly incurred attorney's fees between the filing of its counterclaim and its summary-judgment motion. *See* Dkt. 35 ("Ans.") ¶ 65 (counterclaim, filed October 2021, states that PROS had "sustained damages . . . no less than $697,924.48, which represents $348,962.24 in outstanding subscription fees and $165,821.99 in outstanding invoices for professional services rendered, and attorneys' fees and legal costs incurred in this litigation"). PROS did not suggest in its summary-judgment briefing that it was seeking, for strategic reasons, an amount less than what it was owed under the contract, even though Genetec now attributes (without evidence or a reasonable basis) that *post hoc* motivation to PROS.

Contributing to this lack of clarity are additional inconsistencies and errors by PROS in its other submissions to the Court. For example, in its Rule 56.1 statement of material facts on summary judgment, PROS characterized its $697,924.48 in damages as including interest and

7

attorney's fees and costs, *see* Dkt. 71 ¶ 118 ("As of the date hereof, there remains due and outstanding under the Contract $697,924.48, which represents $348,962.24 in outstanding subscription fees for the second and third years under the Subscription Order and $165,821.99 for professional services rendered prior to Genetec's illegal termination of the Contract, plus interest and attorneys' fees and costs."), while later asserting in the same filing that interest and attorney's fees and costs were *not* included in the $697,924.48 calculation, *see id.* ¶ 126 ("Genetec owes PROS $697,924.48 plus interest and attorneys' fees under the Contract."). Even now, PROS argues in its reply brief that it presented the $697,924.48 figure on summary judgment as the (erroneous) sum of only $348,962.24 in subscription fees and $165,821.99 in professional services, and that interest and attorney's fees and costs should be assessed on top of this amount. Reply at 5 (citing SJ Br. at 12). This assertion clashes with PROS's statement in its moving brief that the same total requested in its counterclaim *included* attorney's fees and costs incurred as of the date of the counterclaim. *See* Br. at 4-5. And to the extent that the $697,924.48 stated in the counterclaim did include such fees and costs, the $183,140.25 in fees purportedly incurred through the filing of PROS's counterclaim appears to overstate the totals of the invoices submitted. *See* Opp. at 11; Dkt. 94-3 at 2-44 (invoices through October 12, 2021, totaling about $125,000).

   Therefore, while PROS could have – and should have – been clearer in setting forth the precise relief requested on summary judgment, the Court deems it appropriate for the reasons stated above to amend its judgment under Rule 60(b)(1) to include the full amount of damages to which PROS is entitled on its counterclaim. *See Kemp v. United States*, 596 U.S. 528, 534 (2022) (noting that "Rule 60(b)(1) covers all mistakes of law made by a judge" and suggesting that "mistake" also includes errors of fact); *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003) (per

curiam) (confirming district courts' authority under Rule 60(b)(1) to reopen judgments to correct their own mistakes, including mistakes of fact). Now that PROS has since submitted, in connection with the instant motion, substantive evidence of its legal fees and costs (as well as support for the precise amount of interest owed), the Court will grant PROS's motion to amend the judgment.[3]

    2. *Judicial Estoppel*

Genetec argues that PROS is judicially estopped from asserting a new demand for attorney's fees and costs. Opp. at 11. Judicial estoppel is "invoked by a court at its discretion" and is designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quotation marks and citations omitted). Typically, judicial estoppel will apply where (1) "the party's argument is 'clearly inconsistent with its earlier position'"; (2) "the party 'succeeded in persuading a court to accept' that earlier position"; and (3) the "'party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *United States v. Apple*, 791 F.3d 290, 337 (2d Cir. 2015) (quoting *New Hampshire*, 532 U.S. at 750-51).

As discussed above, whether PROS's current position on damages is inconsistent with its earlier position is unclear. In any event, the Court does not find that adjudicating PROS's request for an amended judgment with additional damages would unfairly prejudice Genetec. Genetec claims "manifest[] unfair[ness]" but does not explain how a "new quantification of

---

[3] In the alternative, the Court invokes its authority under Rule 59(e) to reconsider its decision. *See Banister*, 590 U.S. at 516 ("A Rule 59(e) motion briefly suspends finality to enable a district court to fix any mistakes and thereby perfect its judgment before a possible appeal."). It would constitute a manifest injustice under Rule 59(e) to preclude PROS from recovering the significant attorney's fees and costs that it incurred litigating this matter since it filed its counterclaim and to which it is entitled under the contract.

damages" would bestow an unfair advantage on PROS. Opp. at 12. The parties did not litigate the amount of reasonable attorney's fees and costs (or the precise amount of total damages) during the prior summary-judgment briefing; the briefs concentrated on Genetec's liability as to PROS's counterclaim. The Court's determination that Genetec was liable for a breach of contract did not depend on a finding of a particular amount of damages. Most importantly, to the extent that Genetec wishes to contest the reasonableness of PROS's fees application (or other damages requested), it has had an opportunity to do so in opposing the instant motion here. Therefore, the Court declines to exercise its discretion to deem the present fees application judicially estopped.

       3. *Apportionment and Reasonableness of Attorney's Fees and Costs*

Having determined to amend its judgment to account for an updated balance of PROS's attorney's fees and costs, the Court next considers the precise amount to award based on the parties now-extensive briefing. Under the American Rule, "attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (brackets, quotation marks, and citation omitted). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). "[W]here a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993).

Per the parties' contract, Genetec agreed to "pay any reasonable legal fees or other costs incurred by PROS to collect any such undisputed delinquent amounts." Dkt. 69-1, Ex. 4 § 2.3. The plain language of the provision covers all claims litigated in this case. For PROS to

"collect" through its counterclaim the "undisputed delinquent amounts" owed by Genetec, it first needed to prove that the parties' contract was valid and enforceable and that PROS had performed its contractual obligations. PROS could not have established those predicate requirements without litigating – and defeating – Genetec's misrepresentation and breach-of-contract claims. *See Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 18 (2d Cir. 1992) ("[W]here a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim.").

Genetec argues that PROS cannot recover expenses "for defending against Genetec's misrepresentation and breach-of-contract" claims because they are not "mirror images" of PROS's breach-of-contract counterclaim. Opp. at 5-6. The text of the contract's fee-shifting provision does not support this argument, and neither does the case on which Genetec relies, *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-cv-06392, 2021 WL 1198930 (S.D.N.Y. Mar. 30, 2021), *aff'd*, No. 2021-1900, 2023 WL 2031213 (Fed. Cir. Feb. 16, 2023). There, the attorney's fees claimed were incurred because of an insurer's default on its duty to defend. *Id.* at *1. *VR Optics* held that "[t]o implicate the duty to defend, a party's affirmative claims cannot be separable from the main action on any coherent grounds and cannot go further than merely seeking the opposite of the relief demanded of the party." *Id.* at *2 (quotation marks and citation omitted). Here, however, Genetec is not an insurer, and PROS does not seek its fees under a duty-to-defend claim. *VR Optics* is therefore inapposite, a point that Genetec itself acknowledges in stating that "[d]ecisions other than *VR Optics* that have spoken to this

11

proposition have usually arisen in insurance coverage disputes." Opp. at 6 n.1. Therefore, the Court will not apportion PROS's fees and costs between its counterclaim and Genetec's claims.

Finally, the Court turns to the reasonableness of the fees and costs sought. Beyond its objection as to apportionment, Genetec does not otherwise dispute the reasonableness of PROS's request for $795,261.04 in attorney's fees and costs. *See generally* Opp. Having reviewed PROS's billing records, the Court finds reasonable the amount claimed by PROS: attorney's fees of $767,251.15 and costs of $28,009.89, for a total amount of $795,261.04. Genetec shall be required to pay this full amount, which represents PROS's fees and expenses incurred from the beginning of this litigation through April 4, 2024. *See* Dkt. 94 ¶ 27; Dkt. 94-3.

### C. Prejudgment Interest

PROS also seeks prejudgment interest on its unpaid subscription fees and professional services from September 30, 2020, when PROS's last invoice became due under the parties' contract. Br. at 21. Genetec does not dispute PROS's entitlement to prejudgment interest but suggests that such interest began to accrue only on May 5, 2023, when PROS moved for summary judgment. *See* Opp. at 19 (requesting that "PROS'[s] damages be limited to . . . prejudgment interest . . . for the period from the filing of PROS'[s] summary judgment motion to the Court's grant of that motion").

The Court awards PROS its full prejudgment interest under Rule 60(a). "[A] district court may correct its judgment under Rule 60(a) to account for prejudgment interest and to specify a date of accrual even where the judgment originally did not provide for interest at all, so long as the record is clear that the court intended to award interest at the time of judgment." *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors*, 102 F.4th 572, 608 n.20 (2d Cir. 2024) (emphasis omitted) (citing *Dudley*, 313 F.3d at 666; and *Robert Lewis Rosen Assocs. v. Webb*, 473 F.3d 498, 504 (2d Cir. 2007)). In granting summary judgment to PROS on

its counterclaim, the Court intended to award prejudgment interest. The Court cited the $697,924.48 in damages claimed by PROS, which, according to PROS, included prejudgment interest. *Genetec II*, 2024 WL 1216472, at *11. Therefore, the omission of prejudgment interest on its grant of summary judgment was a clerical error, and Rule 60(a) applies. *See Dudley*, 313 F.3d at 666 (district court did not err in correcting its judgment to include prejudgment interest under Rule 60(a), even though the judgment did not originally provide for interest, where it was clear from the record that the court intended to award interest); *Webb*, 473 F.3d at 504 (district court did not err when, after confirming arbitrator's award in full, it issued supplemental judgment explicitly providing that future payments were included in award).

Under New York law, prejudgment interest to a verdict, report, or decision "shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." *Id.* § 5004(a). Here, prejudgment interest at nine percent per year accrued, at a minimum, from September 30, 2020 – sixty days after PROS issued Genetec its final unpaid invoice for professional services – to March 21, 2024, the date judgment was entered. As PROS has correctly calculated, a simple interest rate of nine percent per year on $514,784.23 in unpaid subscription fees and professional services amounts to $160,947.24 for the 1,268 days between September 30, 2020, and March 21, 2024. The Court will therefore issue an amended judgment including this amount of prejudgment interest.

**D. Postjudgment Interest**

As for postjudgment interest, the parties dispute the principal by which such interest is to be calculated. PROS seeks postjudgment interest on the entire judgment amount whereas

Genetec contends that the interest should be calculated only on the $514,784.23 in outstanding subscription fees and professional services.  *See* Reply at 10; Opp. at 19.

Under 28 U.S.C. § 1961(a), postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  "The postjudgment amount upon which the interest accrues includes compensatory damages, punitive damages, and fee awards."  *Koch v. Greenberg*, 14 F. Supp. 3d 247, 287 (S.D.N.Y. 2014); *see Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir. 1994) ("Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment.").  Therefore, the Court awards PROS postjudgment interest on the entire judgment amount, running from the original date of judgment.  *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 104 (2d Cir. 2004) (stating that "post-judgment interest should be calculated from whenever judgment was first ascertained in a meaningful way").

## II.    Motion to Approve *Supersedeas* Bond

Next, the Court turns to Genetec's motion to approve a *supersedeas* bond and to stay any proceedings to enforce the Court's judgment in this case pending appeal.  *See* Bond Br.  Genetec proposes to post a bond of $697,924.48, "the amount of damages alleged by PROS in its motion for summary judgment on which judgment was entered."  *Id.* at 1.  PROS opposes the bond as insufficient, demanding a bond of at least $1,646,241.81 to cover its $1,470,992.51 in damages and account for the postjudgment interest and appellate fees that will accrue in litigating

Genetec's appeal.  Bond Opp. at 3, 8.  For the following reasons, Genetec's motion is granted in part and denied in part.

Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security."  Fed. R. Civ. P. 62(b).  The Second Circuit has explained that the "purpose of the rule is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed."  *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (per curiam) (quotation marks and citation omitted).  "If the Court approves the security, the party is entitled to a stay as a matter of right."  *Sire Spirits LLC v. Green*, No. 21-cv-07343 (JPC), 2023 WL 1516574, at *1 (S.D.N.Y. Feb. 3, 2023) (quotation marks and citation omitted).

Given the Court's grant of PROS's motion to amend the judgment, a bond of $697,924.48 is inadequate to "ensure that the prevailing party will recover in full, if the decision should be affirmed."  *In re Nassau Cnty.*, 783 F.3d at 417 (quotation marks and citation omitted).  PROS rightly criticizes Genetec's proposal for failing to account for the postjudgment interest that will accrue during Genetec's appeal, and for "the costs associated with defending against the appeal."  *Georgiev v. Adsad, LLC*, No. 19-cv-00122 (JPO), 2021 WL 3159853, at *1 (S.D.N.Y. June 21, 2021) (proposed bond that does not account for postjudgment interest "will become progressively worse as a safeguard for Plaintiffs' ability to collect on the judgment after appeal").  Genetec, for its part, claims it "would be willing to post an additional bond."  Bond Reply at 5.

Therefore, the Court grants leave for Genetec to post a *supersedeas* bond and stays the Court's judgment pending appeal, provided that Genetec posts at least $1,653,023.91, which

accounts for $1,470,992.51 in damages, $97,031.40 in postjudgment interest, and $85,000 in PROS's expected appellate attorney's fees.[4]

## CONCLUSION

For the reasons set forth above, PROS's motion to amend the judgment is GRANTED. The Clerk of Court is respectfully requested to issue an amended judgment confirming PROS's right to collect from Genetec (1) $1,470,992.51 in damages, including $767,251.15 in attorney's fees, $28,009.89 in costs, and $160,947.24 in prejudgment interest; and (2) postjudgment interest.

Genetec's motion for approval of a *supersedeas* bond is GRANTED in part. It is ordered that the Amended Judgment in this action will be stayed upon Genetec's provision of a $1,653,023.91 bond.

The Clerk of Court is respectfully directed to terminate the motion at Dkts. 93 and 106.

Dated: July 11, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

---

[4] The Court calculates postjudgment interest using a 5.0475 percent simple interest rate (the weekly average of one-year Treasury constant maturities for the week of July 5, 2024) on $1,470,992.51 from March 21, 2024 through one year from the date of this opinion.